**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**GARY MARIEGARD**                                                                        **PLAINTIFF**

**v.**                                                                               **CIVIL ACTION NO.: 1:06CV53**

**MICHAEL W. WYNNE,**
**Secretary of the Department of the**
**United States Air Force**                                                                **DEFENDANT**

**MEMORANDUM OPINION GRANTING IN PART
AND DENYING IN PART SUMMARY JUDGMENT**

Comes now before this Court, Defendant Michael W. Wynne's Motion to Dismiss, or alternatively, for Summary Judgment. After reviewing the motions, responses, rules, and authorities, the Court makes the following findings:

### *A. Factual and Procedural Background*

Gary Mariegard began working at the Columbus Air Force Base as a maintenance mechanic civil service employee in 1993. In May of 2003, Mariegard came forward and reported to his local union representative that he had been continually harassed by his supervisor, Kenneth "Nick" Yearby, since 1998. He specifically alleged that Yearby grabbed and pinched his rear end, genitals, breasts, and ears, called him offensive names, such as "honey," "buzzard beak," and "old f---er," and grabbed his own genitals and asked Mariegard if he "wanted some of this."

Mariegard's union president informed the Air Force Base management of his complaints, and Yearby was moved to a non-supervisory position in another building on the campus. On May 27, 2003, a Commander-Directed Investigation ("CDI") was initiated to investigate Mariegard's allegations of sexual harassment. The investigation concluded in June of 2003 with a finding of substantiated sexual harassment in the Housing Maintenance Section of which Gary Mariegard was

an employee. Gary Mariegard filed an Equal Employment Opportunity ("EEO") Complaint through the EEO office on base on June 12, 2003. That investigation was closed on December 19, 2004, with a finding that the alleged sexual harassment of Gary Mariegard was not severe or pervasive, and the Air Force's reactive steps were appropriate to eliminate the problem. In the meantime, Gary Mariegard retired from his job on October 15, 2004.

On November 17, 2005, Mariegard filed this civil action in district court alleging Kenneth Yearby sexually harassed him under Title VII thereby creating a hostile work environment. The Defendant answered and filed this Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

### B. *Summary Judgment Standard*

"A Rule 12(b)(6) motion is disfavored, and it is rarely granted." Clark v. Amoco Prod. Co., 794 F.2d 967, 970 (5th Cir. 1986); Sosa v. Coleman, 646 F.2d 991, 993 (5th Cir. 1981). Dismissal is never warranted merely because the court believes the plaintiff is unlikely to prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Even if it appears an almost certainty that the facts alleged cannot be proved to support the claim, the complaint cannot be dismissed so long as the complaint states a claim. Clark, 794 F.2d at 970; Boudeloche v. Grow Chem. Coatings Corp., 728 F.2d 759, 762 (5th Cir. 1984). While dismissal under Rule 12(b)(6) ordinarily is determined by whether the facts alleged, if true, give rise to a cause of action, a claim may also be dismissed if a successful affirmative defense appears clearly on the face of the pleadings. Clark, 794 F.2d at 970; Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 74 L. Ed. 2d 953, 103 S. Ct. 729.

Rule 12(b) notes that where a motion to dismiss for failure to state a claim upon which relief

can be granted includes matters outside the pleading, the motion is to be treated as one for summary judgment under Federal Rule of Civil Procedure 56. FED. R. CIV. P. 12(b).

Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Id. at 325, 106 S. Ct. 2548 ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the nonmoving party's case"). An issue is material if its resolution could affect the outcome of the action. Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. 2548 (citing FED. R. CIV. P. 56(c), (e)). All legitimate factual inferences must be made in favor of the nonmovant. Anderson, 477 U.S. at 255, 106 S. Ct. 2505. However, that burden is not discharged by "mere allegations or denials." FED. R. CIV. P. 56(e).

### C. Discussion

Quid Pro Quo Sexual Harassment

The Fifth Circuit has established a methodology for analyzing supervisor sexual harassment cases under Title VII. See Casiano v. AT&T Corp., 213 F.3d 278 (5th Cir. 2000). First, the court determines whether the plaintiff has suffered a "tangible employment action." Id. If there has been

3

a tangible employment action, the claim is classified as "quid pro quo" sexual harassment.

A "tangible employment action" is defined as an action taken by a supervisor which "inflicts direct economic harm." Burlington Indus. v. Ellerth, 524 U.S. 742, 762, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998). Specifically, the United States Supreme Court has noted that those actions include discharge, demotion, or undesirable reassignment. Id. at 765, 118 S. Ct. 2257. The Court has also noted that where a plaintiff feels compelled to resign, a tangible employment action occurs in the form of a "constructive discharge." Penn. State Police v. Suders, 542 U.S. 129, 143, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). To demonstrate constructive discharge, a plaintiff must prove that working conditions were so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign. Webb v. Cardiothoracic Surgery Assocs., P.A., 139 F.3d 532, 539 (5th Cir. 1998).

Mariegard asserts that he was constructively discharged but provided no proof that his retirement was anything but voluntary. Indeed, in his Declaration of Statements to the EEO, Mariegard answers that he has "retired d[ue] to health reasons." The Plaintiff also failed to present this argument in his complaint. Therefore, Mariegard has failed to put forth enough evidence to allege a quid pro quo sexual harassment, and that claim is hereby dismissed.

Hostile Work Environment

If there was no tangible employment action, the supervisor sexual harassment claim is characterized as a "hostile work environment" claim. Casiano, 213 F.3d at 283; see also Wyatt v. Hunt Plywood Company, Inc., 297 F.3d 405, 409 (5th Cir. 2002). To establish a claim for hostile work environment, the plaintiff must show that the supervisor's actions constituted severe or pervasive sexual harassment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L.

Ed. 2d 295 (1993).

In Harris, the Court explained that in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive - one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. Id. at 21-22, 114 S. Ct. 367. The district courts have been directed that to determine whether an environment is sufficiently hostile or abusive, the facts must be analyzed by "looking at all the circumstances," including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (citing Harris, 510 U.S. at 23, 114 S. Ct. 367).

More recently, the Court explained that Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a "general civility code." Id. at 82. Properly applied, they will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing." Faragher, 524 U.S. at 788, 118 S. Ct. 2275.

In the case sub judice, Mariegard has given numerous statements that Yearby touched his breasts, buttocks, ears, and genitals on more than twenty (20) occasions from 1998, the year Yearby became Mariegard's supervisor, until 2003, when Yearby was removed from his supervisory position. Mariegard has also stated that Yearby grabbed his own genitals and asked, "you want some of this" to Mariegard. Further, Mariegard states that Yearby continuously called him names such

as "buzzard beak," "honey," and "old f---er."

Mariegard has offered statements from other subordinates of Kenneth Yearby in order to prove the severity and pervasiveness of the alleged sexually harassing behavior. Randy Hodges, a maintenance mechanic in Mariegard's unit, noted, "I have witnessed Mr. Yearby call Mr. Mariegard "Honey" and sometimes if Mariegard would walk up to Mr. Yearby, he would pinch Mr. Mariegard on the butt." Jimmy Leard, also a maintenance mechanic, stated that he had heard Yearby call employees foul names on several occasions and witnessed "pinching on the bottom, pulling shirt back and showing breasts (only to males, not to females) and making lewd comments." When questioned whether he observed Yearby demeaning subordinates and subjecting them to touching, blowing kisses and/or undressing without permission, Anthony Vassar stated, "What he does to Gary (Mariegard) . . . He would just say things to him to make him all nervous. Gary (Mariegard) would act scared of Mr. Yearby."

Yearby admitted to physically touching Mariegard on numerous occasions by "goosing" him in a joking manner. He further confirmed that he did give "birthday whoopings" to his employees and might have blown kisses to some of them in a joking manner. He defended these actions as "horseplay." However, Yearby denies that he ever grabbed his own genitals and asked if Mariegard "wanted some of it." Yearby additionally declared that he never did any "horseplay" with the ladies of the office.

Other inconsistencies in this case are apparent from the statements and evidence submitted with the motions and responses in this case. Mariegard asserts that he repeatedly asked Yearby to stop the alleged harassment; Yerby contends that Mariegard laughed about the contact and never asked him to stop.

Whether the conduct in question was severe or pervasive enough to warrant a hostile work environment is a genuine issue of material fact. The parties have both presented evidence and the Court will not engage in weighing that evidence or determining credibility. Therefore, Defendant's motion for summary judgment is denied as to whether the Plaintiff sufficiently pled a hostile work environment claim.

Affirmative Defense

"An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Faragher, 524 U.S. at 807, 118 S. Ct. 2275. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. Id., 118 S. Ct. 2275. If the conduct was severe or pervasive, the employer has the benefit of an affirmative defense where the employer has an appropriate sexual harassment policy in place. Id. at 806, 118 S. Ct. 2275. To establish the defense, the employer must show (1) the employer exercised reasonable care to prevent and correct promptly any sexual harassment, and (2) the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. Ellerth, 524 U.S. at 759, 118 S. Ct. 2257; Faragher, 524 U.S. at 806, 118 S. Ct. 2275 (known collectively as the Ellerth/Faragher affirmative defense).

Proof of a stated policy on sexual harassment in the workplace is generally the basis of the first factor of the Ellerth/Faragher affirmative defense. The Defendant notes, and Mariegard does not dispute, that employees at the Columbus Air Force Base are required to attend a four hour training session on the sexual harassment policy of the United States Air Force upon hire and upon

certain position changes within the base. Additionally, according to Antoinette Holcomb, EEO Officer, the base is in compliance with the requirement that all policy letters and EEO posters regarding sexual harassment be visible to the members of every unit on base. Moreover, according to EEO records, the Commander of Mariegard's unit requested EEO training in February 2003, and documentation shows that the training was thereafter received.

Mariegard asserts that between 1998 and 2003, he notified five different managers of Yearby's alleged sexual harassment. Lee Blair, Chief of Operations of the 14th Civil Engineer Squadron, swore that neither he, nor any other supervisor, was notified by Mariegard that Yearby was allegedly sexually harassing him. However, Bob Spell, Mariegard's initial supervisor, stated during a recorded conversation with Jerry Young[1] on November 10, 2005, that "Mariegard came to see me, in my office and complained . . . that Yearby was making some type of sexual overtures at him. I think [Yearby] was petting [Mariegard] . . . it was some type of physical contact that he was making against Mariegard and Mariegard asked me if there was anything I could do about this." Spell contends that the encounter with Mariegard was before 2000 and in response, he "called Nick Yearby in and I counseled him on that." Spell further states that he was led to believe that the behavior had stopped, but that after Spell retired in 2000, Mariegard again complained to him about Yearby. Spell declares he told Mariegard to "go to his boss, like he did to me and you know, and try to take some action there."

Indeed, Mariegard did not get relief from the alleged sexual harassment until he reported the conduct to his Union representative. The Defendant contends that once the alleged conduct was

---

[1]There is no indication in Plaintiff's Brief regarding the identity of Jerry Young. The Court notes that Bob Spell's conversation was with Jerry Young in order to prevent confusion about to whom Bob Spell was talking.

brought to the attention of the base management, Yearby was promptly removed from his supervisory position and reassigned to another facility. Mariegard has presented a factual issue of whether the Air Force's reaction to his allegations of sexual harassment were prompt or reasonable.

The Defendant notes that Mariegard unreasonably failed to take advantage of the protective measures it offered through its EEO office. However, Mariegard offered evidence that he complained to at least one of his supervisors and was offered no relief. Further, the EEO poster attached to Government Exhibit 10 states, "Please attempt resolution locally first through the MEO/EEO office **or your chain of command**." (emphasis added). Therefore, the Court finds that Mariegard has put forth a genuine issue of material fact as to whether he took adequate steps to take advantage of the sexual harassment policy in effect at the time of the alleged conduct.

<u>Subject Matter Jurisdiction</u>

The Defendant asserts that this court lacks subject matter jurisdiction to hear this claim on the basis that the Plaintiff failed to file his claim with the EEO counselor within the time limits prescribed by 29 C.F.R. § 1614.105(a)(1). The regulations applying Title VII's anti-employment discrimination provisions to federal employees require employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap" to contact an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1). Once a federal employee has participated in, and exhausted, the administrative process, he may bring suit in federal court under Title VII. <u>See</u> <u>Tolbert v. United States</u>, 916 F.2d 245, 247 (5th Cir. 1990). Should the federal employee fail to exhaust his administrative remedies, the district court cannot adjudicate the employee's Title VII claim. <u>Fitgerald v. Secretary, U.S. Dep't of Veterans Affairs</u>, 121 F.3d 203, 206 (5th Cir. 1997).

9

Here, Mariegard has waivered on the date of the last allegedly discriminatory action by Yearby. On his EEO Complaint, the Plaintiff cites "[a]round April 2003" as the most recent date the alleged discrimination took place. However, in an affidavit produced February 22, 2008, Mariegard asserts that "around May 16, 2003, Kenneth Yearby grabbed me in my genital area." Another statement by Gary Mariegard given in response to the EEO investigation provides that on May 2, 2003, May 5, 2003, and May 8, 2003, "[Yearby] [g]rabbed me and called me 'Honey.'"

On May 19, 2003, Gary Mariegard filed an informal complaint with the Union regarding Yearby's alleged inappropriate behavior. The Union President then contacted the Air Force Base management to report the serious allegations. Resultantly, Yearby was removed from his supervisory position and placed in another department away from the Plaintiff on May 27, 2003. On that same date, a Commander Directed Investigation ("CDI") was initiated to uncover the alleged facts around Mariegard's accusations.

Because Mariegard initiated a complaint with his union, the EEO refused to process his grievance, as he had "already chosen a non-EEO procedure." After notification of completion of the Union investigation, Mariegard contacted an EEO counselor on September 4, 2003, to proceed with his complaint. The precomplaint procedures were unsuccessful in resolving Mariegard's issues, so he filed a formal complaint of discrimination with the EEO on October 31, 2003.

On February 18, 2004, Mariegard received notice of the dismissal of his complaint due to timeliness and his contact with the Union, which the EEO perceived as an attempt to file a grievance under the Union's negotiated bargaining agreement.[2] Mariegard further appealed that decision and

---

[2] It is unclear from the documents provided whether the Union's collective bargaining agreement or EEO regulations prevent the concurrent investigation of a grievance. However, that fact is inapposite here and meant only to clarify why Mariegard's initial EEO complaint was

on June 21, 2004, after a thorough review of the appeal, the EEOC rescinded the dismissal of Mariegard's complaint. Therefore, on October 25, 2004, the EEO's Office of Complaint Investigations commenced its investigation into the sexual harassment allegations put forth by Gary Mariegard against Kenneth Yearby.

Accordingly, due to the EEO mistake in assuming that Mariegard's contact with the Union resulted in formal grievance procedures taken, and their directive to hold his complaint in abeyance until that grievance procedure was completed, the Court declares that Gary Mariegard's EEO complaint would have been timely as of June 12, 2003, had he been allowed to file a complaint at that time. Therefore, all allegations of sexually harassing conduct within forty-five days of June 12, 2003, are within the subject matter jurisdiction of this court.

Mariegard also argues that his prior claims should be covered under the "continuing violation" exception to the forty-five (45) day limitation. <u>Abrams v. Baylor College of Med.</u>, 805 F.2d 528, 532 (5th Cir. 1986) (recognizing an exception to the limitation period "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts").

Under the continuing violation exception, a plaintiff must prove that a "persisting and continuing system of discriminatory practices" produces "effects that may not manifest themselves as individually discriminatory except in cumulation over a period of time," and that one of the acts falls within the limitations period. <u>Messer v. Meno</u>, 130 F.3d 130, 135 (5th Cir. 1997). The Court must consider whether the acts involved the same type of discrimination; are related and recurring rather than isolated incidents; and whether the acts are pervasive enough to trigger an employee's awareness of and duty to assert his rights, or are the type of actions which do not indicate a

---

dismissed.

continuing intent to discriminate. Berry v. Bd. of Supervisors, 715 F.2d 971, 981-82 (5th Cir. 1983). Should the employee establish an ongoing pattern of behavior, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts. See Huckabay v. Moore, 142 F.3d 233, 238-39 (5th Cir. 1998); Frank v. Xerox Corp., 347 F.3d 130, 136 (5th Cir. 2003).

The alleged offenses committed by Yearby against Mariegard were mostly discrete but in some instances blatant. The supposed acts committed against Mariegard thus did not require accumulation for their discriminatory character to be apparent. Mariegard was on notice even prior to Yearby becoming his supervisor, that the alleged conduct was, in his words, "degrading." Thus, he is precluded from asserting that the actions outside the forty-five (45) day time limit should be adjudicated.

His continuing violation argument is also weakened by his claim that he made multiple prior complaints to various supervisors about the alleged harassment. Allowing Mariegard to assert individual claims older than forty-five days would defeat any effect of the limitations period. See Abrams, 805 F.2d at 533 ("This theory of continuing violation has to be guardedly employed because within it are the seeds of the destruction of statutes of limitation in Title VII cases."). Therefore, Mariegard may only claim a hostile work environment based on the alleged harassment occurring forty-five (45) days prior to his EEO complaint.

*Conclusion*

Because Mariegard cannot establish that a tangible employment action occurred due to his alleged harassment, he is precluded from asserting quid pro quo sexual harassment. However, he has established a genuine issue of material fact regarding his hostile work environment claim. The

12

employer unreasonably failed to take prompt remedial actions when notified that Yearby may be perpetuating harassing conduct; therefore, the Defendant cannot be accorded the affirmative defense normally available in hostile work environment claims. Moreover, Plaintiff is precluded from asserting any other violations other than those that occurred within the forty-five (45) day window prior to June 12, 2003.

Accordingly, Defendant's Motion for Summary Judgment is hereby granted as it relates to the quid pro quo sexual harassment and denied in relation to the hostile work environment claim.

A separate order in accordance with this opinion shall issue this day.

This the  12th  day of March 2008.

                                         **/s/ Sharion Aycock**
                                         **U.S. DISTRICT JUDGE**